**IDEAL TOY CORPORATION, Plaintiff,**

**v.**

**FAB–LU LTD. (Inc.) and David Faber, Defendants.**

**No. 64 Civ. 3112.**

United States District Court
S. D. New York.

Nov. 12, 1964.
On Reargument March 17, 1965.

See also D.C., 261 F.Supp. 238.

Amster & Rothstein, New York City, for plaintiff (Morton Amster and Jesse Rothstein, New York City, of counsel).

Hubbell, Cohen, Stiefel & Fiddler, New York City, for defendants (Robert W. Fiddler, New York City, of counsel).

## MEMORANDUM

MacMAHON, District Judge.

Plaintiff seeks a preliminary injunction restraining defendants from selling their "Randy" and "Mary Lou" dolls. It is claimed (1) that defendants' dolls infringe plaintiff's copyrighted "Tammy" and "Pepper" dolls under 17 U.S.C. § 101, and (2) that defendants are using reproductions of plaintiff's "Tammy" doll in advertising their "Randy" doll, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Plaintiff is one of the largest and oldest producers of toys in the United States, with annual sales of dolls in excess of $15,000,000.00.

In March of 1962, plaintiff commenced selling a new 12 inch doll under the trademark "Tammy," created in the image of today's teen-ager, to which it embossed notice of copyright between the shoulder blades and at the nape of the neck. The claim to copyright was registered on April 15, 1963. The certificate of registration was apparently in the class of "works of art; models or designs for works of art" (17 U.S.C. § 5(g)) and covered the entire doll. After extensive promotion and marketing, plaintiff has sold more than three and one-half million "Tammy" dolls having aggregate retail sales in excess of $10,000,000.00.

In March of 1963, plaintiff commenced selling a new 9 inch doll under the trademark "Pepper," created in the image of today's pre-teen-ager and known as "Tammy's Little Sister," to which it embossed notice of copyright identical to that of "Tammy." The claim to copyright was registered on September 16, 1963, and the certificate of registration, similar to the one issued for "Tammy," was issued on the same date. After extensive promotion and marketing, "Pepper" has met with commercial success similar to that of "Tammy."

Defendant Fab-Lu Ltd. (Inc.), which is said to be controlled by the individual defendant, is a New York corporation, organized in 1960, and is engaged in the business of importing dolls. At defendants' request, their Hong Kong supplier provided defendants with the "Randy" and "Mary Lou" dolls which defendants market in the United States in competition with, and at a lower price than, plaintiff's "Tammy" and "Pepper" dolls.

Plaintiff's copyright seems valid on its face, and it is certainly valid enough to support a preliminary injunction. Rushton v. Vitale, 218 F.2d 434 (2d Cir. 1955). However, plaintiff's contention that the accused dolls are so similar to plaintiff's dolls that an ordinary observer would conclude that one was copied from the other cannot be sustained. Although the accused dolls are similar to plaintiff's dolls in size and shape, and indeed some features (such as hands and arms) are virtually identical, we think the total effect of the image conveyed to an ordinary observer by the accused dolls is quite distinct from that of plaintiff's dolls. Gerlach-Barklow Co. v. Morris & Bendien, Inc., 23 F.2d 159 (2d Cir. 1927); Ideal Toy Corp. v. Adanta Novelties Corp., 223 F.Supp. 866 (S.D. N.Y.1963). We find, therefore, that plaintiff has failed to show a reasonable probability that it will be able to prove copyright infringement as to either of its dolls upon the trial.

Plaintiff also claims that defendants violated the Lanham Act by using pictures of "Tammy" to advertise defendants' "Randy" doll. There is, however, no such claim or proof with respect to plaintiff's "Pepper" doll. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part:

"Any person who shall affix * * * or use in connection with any goods * * * any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods * * * to enter into commerce * * * shall be liable to a civil action * * * by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

Pictures of "Tammy" were extensively used in advertising defendants' "Randy"

doll. This is readily apparent from an examination of the corporate defendant's catalogue (Plaintiff's Exhibit 3) and full page advertisement appearing at page 43 of the May, 1964 issue of "Playthings" magazine (Plaintiff's Exhibit 4). "Tammy" is easily identified in these advertisements by its neck construction, hairstyle, and in one photograph by a cheerleader sweater with a "T" on it, all of which are quite different from "Randy." Defendants thus advertised their cheaper "Randy" doll with photographic reproductions of "Tammy," creating the false impression that defendants' "Randy" is the same in appearance as plaintiff's "Tammy" and thereby diverting trade from plaintiff. L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 214 F.2d 649 (3d Cir. 1954); Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608 (S.D.N.Y.1961).

Plaintiff has shown the likelihood that continuance of defendants' deceptive advertising of their "Randy" doll will cause irreparable injury in terms of loss of customers, goodwill, and reputation. This injury is likely to be magnified unless defendants are enjoined from continuing their deceptive practices, particularly as the demand for dolls reaches its peak from now until Christmas.

■ The equities here all favor plaintiff, and it is quite probable that plaintiff will succeed upon the trial of this action on its claim under the Lanham Act. There is no feasible way for this court to separate the sales which defendants will make as a result of their deceptive advertising from those they may make as a result of legitimate advertising. We must, therefore, enjoin all further sales by defendants of their "Randy" doll in order to grant full and effective relief. Zandelin v. Maxwell Bentley Mfg. Co., supra.

Accordingly, plaintiff is entitled to a preliminary injunction enjoining defendants from advertising or selling their "Randy" doll pending the hearing and determination of this action. Settle order on notice within five (5) days.

*On Reargument.*

MacMAHON, District Judge.

In October 1964, plaintiff sought a preliminary injunction restraining defendants from selling their "Randy" and "Mary Lou" dolls. It was claimed (1) that defendants' dolls infringed plaintiff's copyrighted "Tammy" and "Pepper" dolls under 17 U.S.C. § 101, and (2) that defendants' advertising of their "Randy" doll violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). On November 12, 1964, we denied the motion as to the alleged copyright infringement. However, we granted the motion for a preliminary injunction restraining defendants from selling their "Randy" doll, as defendants' advertising was probably in violation of the Lanham Act.

Plaintiff, by motion for reargument, requests reconsideration of our determination regarding the alleged copyright infringement and renews its motion for a preliminary injunction for alleged copyright infringement. The renewed motion is accompanied by the deposition of the individual defendant, David Faber, which was not before the court on the original motion.

■ There are two distinct and "separate elements essential to a plaintiff's case in such a suit: (a) that defendant copied from plaintiff's copyrighted work and (b) that the copying (assuming it to be proved) went so far as to constitute improper appropriation." Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946). On plaintiff's original motion similarities between its copyrighted dolls and the accused dolls were demonstrated. In the deposition of the individual defendant, which accompanies the renewed motion, there is evidence that defendants had access to at least one of plaintiff's dolls. Both the renewed motion and the motion for reargument urge that a prima facie showing of copying has been made, and that "the burden of going forward with the evidence shifts to the defendants who

must refute the probability of copying by evidence of independent creation."

It is unnecessary to determine whether there is enough evidence to say that defendants probably copied plaintiff's dolls, or whether "the burden of going forward" on the issue of copying should shift to defendants, for plaintiff has failed to demonstrate the second element of its case: "that the copying (assuming it to be proved) went so far as to constitute improper appropriation." Arnstein v. Porter, supra.

The test of "improper appropriation" is the response of the ordinary lay observer to the dolls. As Judge Frank said in *Arnstein*, at 473:

"The proper criterion on that issue is not an analytic or other comparison of the respective musical compositions as they appear on paper or in the judgment of trained musicians. The plaintiff's legally protected interest is not, as such, his reputation as a musician but his interest in the potential financial returns from his compositions which derive from the lay public's approbation of his efforts. The question, therefore, is whether defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such popular music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff."

We applied this test in our denial of plaintiff's original motion: "the total effect of the image conveyed to an ordinary observer by the accused dolls is quite distinct from that of plaintiff's dolls." Neither of plaintiff's present motions is addressed to this essential element of its case. The best evidence from which this determination can be made, the dolls themselves, was before the court when the original motion was denied. Therefore, we have no reason to question our earlier belief that there was probably no improper appropriation.

Accordingly, we grant plaintiff's motion for reargument, but upon reargu-ment we adhere to our original determination that there was probably no improper appropriation. The renewed motion for a preliminary injunction is denied for the same reason.

So ordered.