**CONDOTTI, INC., Plaintiff,**

v.

**Joseph SLIFKA and Sylvia Slifka, doing business as Slifka Fabrics and Nuloom Fabrics and Joseph Samelson, Defendants.**

United States District Court
S. D. New York.

Oct. 21, 1963.

Helfat & Helfat, New York City, Bernard A. Helfat, New York City, of counsel, for plaintiff.

Arnold R. Krakower, New York City, Isidore A. Seltzer, New York City, of counsel, for defendants.

HERLANDS, District Judge.

This is an application for a temporary injunction by the owner of four copyrighted textile designs (Exhibits "1", "3", "5" and "7"). The defendants sought to be so enjoined are competitors of the plaintiff who are marketing similar textile designs (Exhibits "2", "4", "6" and "8") claimed by plaintiff to be infringing plaintiff's copyrighted designs. In addition, plaintiff claims that defendants have been committing acts of unfair competition.

Certain uncopyrighted fabric designs (Exhibits "9" and "11") owned by plaintiff are also said to have been copied by defendants (as exemplified by Exhibits "10" and "12"); and this alleged copying of plaintiff's uncopyrighted designs is also encompassed within plaintiff's charge of unfair competition.

Plaintiff recognizes that the defendants' designs are not replicas or exact copies of its designs. However, plaintiff contends that in certain material respects —e. g., over-all appearance, aesthetic appeal, structural features, basic pattern, configuration, spatial groupings and arrangements, colors and color combinations—the defendants' designs are copies of the plaintiff's copyrighted and uncopyrighted designs.

Plaintiff's moving papers, including the demonstrative evidence of the plaintiff's and defendants' designs as embodied in the cloth, are an elaboration of the foregoing contention.

This contention is further supported by the affidavits tending to establish that various representatives of the defendants have admitted to the trade that the defendants have copied the plaintiff's designs and that whatever changes were effected by the defendants were of such a nature as to accomplish copying while supplying the defendants with the defense that their designs were different.

Defendants controvert the plaintiff's moving affidavits by submitting detailed denials and explanations in their opposing affidavits and various exhibits.

Defendants have been litigants in prior similar fabric-design lawsuits in this court. Millworth Converting Corporation v. Slifka, 276 F.2d 443 (2d Cir. 1960); Clarion Textile Corp. v. Slifka, 223 F.Supp. 950, 61 Civ. 2258 (S.D.N.Y. 1961); Cortley Fabrics, Inc. v. Slifka, 175 F.Supp. 66 (S.D.N.Y.1959). They and their attorneys are veterans in this arena of copyright warfare. Their papers, their arguments and defendants' designs manifest this experience.

The opposing affidavit of the defendant Joseph Samelson (sworn to September 1, 1963) states *inter alia:*

"The apparent similarities between the defendants' designs and those of the plaintiff are attributable to the fact that the defendants' designs express design *ideas like those expressed in the plaintiff's designs.* The only other apparent similarity of the respective designs is that the defendants' designs have similar colors to those used in the plaintiff's designs" (page 3). (Emphasis added.)

"During the latter part of April or early part of May of this year, *I had seen some of the plaintiff's goods and liked the ideas shown or suggested by their printed designs.* I then participated with artists in the employ of Slifka Fabrics in the selection of design elements, useful as sources for the creation of *our own original designs expressing similar ideas*" (page 4). (Emphasis added.)

This defendant (Samelson affidavit, p. 4) claims that he "used as the artistic sources for the defendants' designs" a so-called "idea and reference book" by Michael Estrin, entitled "2,000 Designs, Forms and Ornaments" (Defendants' Exhibit "A"). It is further stated (Samelson affidavit, p. 4):

"All of the component design motifs and elements of defendants' respective fabric designs are based upon and derived from similar designs illustrated in that reference book, * * *."

In elaboration of the latter statement, Samelson makes the following specific assertions in his affidavit concerning his use of the reference book, Exhibit "A", in allegedly preparing the four accused designs:

*As to Exhibit "2"*

This design (charged by plaintiff with infringing Exhibit "1") is denominated by defendants as "Defendants' Oriental or a Chinese Dragon Design". Samelson says that the "dragon depicted in the de-

fendants' design was adapted from the animal shown" on page 124 of Exhibit "A"; that the dragon there depicted is "an imaginary or fictional animal with talon claws and shaggy fur"; and that the defendants' design is an adaptation of that animal rather than of the lion in the plaintiff's design.

*As to Exhibit "4"*

This design (charged by plaintiff with infringing Exhibit "3") is denominated by the defendants as "Defendants' Crown on Feathers Design". Samelson says that the "sources for this design, which consists essentially of an openwork crown resting on impressionistic foliage" are "the similar openwork crown shown" on page 44 of Exhibit "A"; and that the floral elements of the design were derived from "similar foliage depicted on one of the designs appearing on the cover" of Exhibit "A".

*As to Exhibit "6"*

This design (charged by plaintiff with infringing Exhibit "5") is denominated by defendants as "Defendants' filigree or lacy type ornaments on a striped background design". Samelson says that "the sources" of its motifs and ornaments are those depicted on pages 65 and 79 of Exhibit "A".

*As to Exhibit "8"*

This design (charged by plaintiff with infringing Exhibit "7") is denominated by defendants as "Defendants' coat of arms mounted on bowl design". Samelson says that the sources of its coat of arms featuring a lion and a unicorn and its bowl under the coat of arms are corresponding items on pages 44 and 106 of Exhibit "A".

Plaintiff has submitted a detailed analysis demonstrating the many similarities between the plaintiff's and the defendants' designs. Defendants have submitted a detailed analysis demonstrating the many disparities between the plaintiff's and defendants' designs. These analyses are set forth as an appendix to this opinion.

The total record establishes the following facts and conclusions:

1. There are many striking similarities between the plaintiff's and the defendants' designs.

2. There are many significant differences between the parties' designs.

3. Plaintiff's copyrighted designs (Exhibits "1", "3", "5" and "7") are original designs, not previously in the public domain. H. M. Kolbe Co., Inc. v. Armgus Textile Company, Inc., 315 F. 2d 70, 72 (2d Cir. 1963); Peter Pan Fabrics, Inc. v. Dixon Textile Corp., 280 F.2d 800, 802 (2d Cir. 1960); Peter Pan Fabrics, Inc. v. Acadia Company, 173 F. Supp. 292 (S.D.N.Y.1959), aff'd Peter Pan Fabrics, Inc. v. Martin Weiner Corp., 274 F.2d 487 (2d Cir. 1960); Alfred Bell & Co. Ltd. v. Catalda Fine Arts Inc., 191 F.2d 99, 102–103 (2d Cir. 1951).

4. Because plaintiff's copyrighted designs have not been in the public domain, the test of infringement to be applied herein is that laid down in Peter Pan Fabrics, Inc. v. Acadia Company, supra, and not that formulated in Millworth Converting Corp. v. Slifka, 276 F.2d 443, 445 (2d Cir. 1960), where the basic design had been in the public domain.

5. In Peter Pan Fabrics, Inc. v. Martin Weiner Corp., supra, Judge Hand (274 F.2d at 489) expounded the test here applicable as follows:

"The test for infringement of a copyright is of necessity vague. In the case of verbal 'works' it is well settled that although the 'proprietor's' monopoly extends beyond an exact reproduction of the words, there can be no copyright in the 'ideas' disclosed but only in their 'expression.' Obviously, no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be *ad hoc*. In the case of designs, which are addressed to the aesthetic sensibilities of an observer, the test is, if possible, even more in-

tangible. No one disputes that the copyright extends beyond a photographic reproduction of the design, but one cannot say how far an imitator must depart from an undeviating reproduction to escape infringement. In deciding that question one should consider the uses for which the design is intended, especially the scrutiny that observers will give to it as used. In the case at bar we must try to estimate how far its overall appearance will determine its aesthetic appeal when the cloth is made into a garment. Both designs have the same general color, and the arches, scrolls, rows of symbols, etc. on one resemble those on the other though they are not identical. Moreover, the patterns in which these figures are distributed to make up the design as a whole are not identical. However, the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same. That is enough; and indeed, it is all that can be said, unless protection against infringement is to be denied because of variants irrelevant to the purpose for which the design is intended."

6. Defendants' designs are not sufficiently imitative to infringe, under the test laid down by Judge Hand. Obviously there are many striking similarities in structural characteristics, in uses of shadings, stippling, colors and color combinations, and in spatial arrangements and configurations. But equally obvious are the many striking dissimilarities and variations.

Considering the uses for which the designs are intended, the Court is of the opinion that the defendants' designs contain enough variants to give them a different over-all appearance and aesthetic appeal when the cloths are made into garments.

7. Defendants sedulously borrowed each of plaintiff's "ideas". Defendants then proceeded to make substantial deviations from plaintiff's "expression" of those ideas by cross-breeding plaintiff's expressions with those found in the design form-book (Exhibit "A"). As a result, defendants' designs are aesthetic mutations, reflecting major changes and significant alterations that keep clear of plaintiff's "expression".

8. In view of the preceding finding, the present case is governed by the principle that there is no copyright infringement when *only* the ideas are copied. See Mazer v. Stein, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630; Millworth Converting Corporation v. Slifka, 276 F.2d 443, 445, 446 (2d Cir. 1960); Clarion Textile Corp. v. Slifka et al., 223 F.Supp. 950, 61 Civ. 2258 (S.D.N.Y. 1961).

This is not a case where the copyists infringed the plaintiff's "expression" of its ideas, as in Peter Pan Fabrics, Inc. v. Acadia Company, supra; Peter Pan Fabrics, Inc. v. Candy Frocks, Inc., 187 F. Supp. 334, 336 (S.D.N.Y.1960).

9. Plaintiff has failed to establish its charge of unfair competition, in fact and in law. There is no evidence that a secondary meaning has attached to plaintiff's merchandise or designs; nor is there any evidence that defendants have palmed off their goods or designs as plaintiff's or that any customers have been deceived or confused as to the source or origin of any of the goods purchased by them. Miss Susan, Inc. v. Enterprise & Century Undergarment Co., 270 App.Div. 747, 62 N.Y.S.2d 250 (1946); Oleg Cassini, Inc. v. Dorene Fashions Corp., Sup., 155 N.Y. S.2d 64, rev'd on other grounds, 3 A.D.2d 706, 159 N.Y.S.2d 664 (1957), aff'd 4 N.Y.2d 826, 173 N.Y.S.2d 621, 149 N.E.2d 899 (1958); Varsity Sportswear Inc. v. Princess Fabrics Co., 174 Misc. 298, 19 N.Y.S.2d 723 (1940); Samuel Winston Inc. v. Charles James Services, Inc., S. 159 N.Y.S.2d 716 (1956).

Unfortunately for the plaintiff, this case is controlled by desiderata of optics and aesthetics and not ethics.

The findings and conclusions required by F.R.Civ.P., rule 52(a), are contained in this opinion.

The plaintiff's motion is denied. Settle order on notice within five days, in accordance with F.R.Civ.P., rule 65(d).

## APPENDIX

### COMPARISON SUBMITTED BY PLAINTIFF

COPYRIGHT NO. K-66801
PATTERN 1546 (LION DESIGN)

### COMPARISON OF EXHIBITS "1" AND "2"

| | EXHIBIT "1" | EXHIBIT "2" |
|---|---|---|
| CENTRAL FIGURE | Lion Rampant | Lion Rampant or similar animal |
| TAIL | Long and recurved knob at end | Long and recurved knob at end |
| TONGUE | Protruding | Protruding |
| HINDLEGS | Firmly planted, left leg advanced | Firmly planted, left leg advanced |
| FORE LEGS | Raised and separated | Raised and separated |
| BACK | Recurved | Recurved |
| MARKINGS | Stippled effect, for three-dimensional effect, on chest, along back, tail and legs, most apparent on light colored areas. Contrasting color on chest, along legs, top of head, eyes and tongue. Outline and markings in darker shade of body color. | Stippled effect, for three-dimensional effect, on chest, along back, tail and most apparent on light colored areas. Contrasting color on chest, along legs, top of head, eyes and tongue. Outline and markings in darker shade of body color. |
| SIZE | 4¾" x 3¼" | 5" x 4½" |
| BACKGROUND | Solid Color | Solid Color |
| ALIGNMENT OF FIGURES | Figures in alternate rows inverted. Lions spaced precisely opposite vacant space in adjacent rows. | Figures in alternate rows inverted. Lions spaced precisely opposite vacant space in adjacent rows. |
| VERTICAL INTERVAL BETWEEN FIGURES | 2¾" | 3" |

| HORIZONTAL INTER-<br>VAL BETWEEN FIG-<br>URES IN ALTER-<br>NATE ROWS | 5⅝″ | 5⅝″ |
|---|---|---|
| COLOR | 3 colors plus back-<br>ground color | 3 colors plus back-<br>ground color |

COPYRIGHT NO. K-66802

COMPARISON OF EXHIBITS "3" AND "4"
PATTERN 1572 (CROWN AND FOLIAGE DESIGN)

| | EXHIBIT "3" | EXHIBIT "4" |
|---|---|---|
| CENTRAL FIGURE | Foliage and Crown | Foliage and Crown |
| RELATIVE POSITIONS | Foliage appears to be growing out of base of crown. (This is a highly original combination) | Foliage appears to be growing out of base of crown. |
| RELATIVE SIZE | Foliage is higher and wider than crown. | Foliage is higher and wider than crown. |
| SYMMETRY | Foliage and crown are both symmetrical on vertical axis. | Foliage and crown are both symmetrical on vertical axis. |
| MARKING | Crowns and foliage are divided on vertical axis by contrasting colors. Pearls crown. | Crowns and foliage are divided on vertical axis by contrasting colors. Pearls or beads on top of crown. |
| | Stippled effect on right side of figure when viewed with crown above foliage. | Stippled effect on right side of figure when viewed with crown above foliage. |
| BACKGROUND | Solid color where black, two air-brush ombre stripes on dyed ground in other colors. | Solid color where black, two air-brush ombre stripes on dyed ground in other colors. |
| ALIGNMENT OF FIGURES | Figures in alternate rows inverted. Crown and foliage spaced precisely opposite vacant spaces in adjacent rows. | Figures in alternate rows inverted. Crown and foliage spaced precisely opposite vacant spaces in adjacent rows. |
| VERTICAL INTERVAL BETWEEN FIGURES | 2½″ | 2¾″ |

| | | |
|---|---|---|
| HORIZONTAL INTERVAL BETWEEN FIGURES IN ALTERNATE ROWS | 4⅝″ | 5⅛″ |
| COLOR | On striped backgrounds 5 colors or rollers plus background color. Pigment overprinting used to print light colors on darker colors. On black backgrounds 3 colors plus background color. | On striped backgrounds 5 colors or rollers plus background color. Pigment overprinting used to print light colors on darker colors. On backgrounds 3 colors plus background color. |

COPYRIGHT NO. K-66811

## COMPARISON OF EXHIBITS "5" AND "6"
## PATTERN 1544 (LOCK AND KEY DESIGN)

| | EXHIBIT "5" | EXHIBIT "6" |
|---|---|---|
| CENTRAL FIGURE | Highly decorated keyhole plate with hole in center and key. | Highly decorated keyhole plate with hole in center and key. |
| RELATIVE POSITIONS | Key is ~~vertical~~ parallel and adjacent to lock. | Key is ~~vertical~~ parallel and adjacent to lock. |
| RELATIVE SIZE | Area of lock is about twice that of key. | Area of lock is about twice that of key. |
| MARKING | Contrast is given to figures by background stripes cutting through them, and lock and key are each divided vertically by color. | Contrast is given to figures by background stripes cutting through them, and lock and key are each divided vertically by color. |
| SIZE | 4″ x 3¼″ | 4″ x 4″ |
| BACKGROUND | Repeated stripes of three different colors. (Two colors on dyed ground.) Stripes all approximately two inches in width. | Repeated stripes of three different colors. Stripes all approximately two inches in width. |
| COVER ROLLER | Whole design is covered by thin black lined effect with random thickening of lines running in same direction as wide stripes. | Whole design is covered by thin black lined effect with random thickening of lines running in same direction as wide stripes. |

| | | |
|---|---|---|
| ALIGNMENT OF FIGURES | Figures in alternate rows inverted. Lock and key spaced precisely opposite vacant spaces in adjacent rows. Although design is inverted, key always remains on same side of lock. (Not a true two-way pattern). | Figures in alternate rows inverted. Lock and key spaced precisely opposite vacant spaces in adjacent rows. Although design is inverted, key always remains on same side of lock. |
| VERTICAL INTERVAL BETWEEN FIGURES | 3⅝″ | 3¾″ |
| VERTICAL INTERVAL BETWEEN SAME POINT IN DESIGNS IN SAME ROW | 7¾″ | 7¾″ |
| HORIZONTAL INTERVAL BETWEEN FIGURES IN ALTERNATE ROWS | 4″ | 3½″ |
| HORIZONTAL INTERVAL BETWEEN SAME POINT IN DESIGN IN ALTERNATE ROWS | 7¼″ | 7½″ |
| COLOR | 5 colors on dyed ground. Lock and Key shading contrasts with striped background. | 5 colors on dyed ground. Lock and Key shading contrasts with striped background. |

Defendants' Exhibit "B" contains samples of Exhibit 6 printed on light backgrounds. All other samples of Exhibits 5 and 6 are printed on dark backgrounds as called for by the season in which they were offered for sale. Any change from a dark background to a light background is quite obvious. It is equally noticeable between two pieces of defendants' own textile on different backgrounds as it is between plaintiff's design on a dark background and defendants' on a light background. The fact that a copy will not be confused with the original if they are printed in contrasting colors does not, however, excuse infringement. In the case at bar, defendants actually offered the infringing design for sale in the same colors as those used by plaintiff, and there was confusion. The light grounds were obviously an afterthought and may never have been sold in commercial quantities. Infringement occurs when a design is copied from the copyright, regardless of the colors in which it is printed, even though, as a practical matter, the copyright owner may suffer pecuniary damage only when the copy is sold in similar colors to its own. There would have been no incentive for defendants to copy the copyright if they were not using plaintiff's color combinations.

COPYRIGHT NO. K-67154

## COMPARISON OF EXHIBITS "7" AND "8"
### PATTERN Y-1605 (COAT OF ARMS DESIGN)

| | EXHIBIT "7" | EXHIBIT "8" |
|---|---|---|
| CENTRAL FIGURE | Conventional Coat of Arms. | Conventional Coat of Arms. |
| ANIMALS | Two animals flank figure and third sits on crest. | Two animals flank figure and third sits on crest. |
| CROWN | Centered at top of figure. | Centered at top of figure. |
| SHIELD | Quartered, at center of figure. | Quartered, at center of figure. |
| MARKINGS | Darker, stippled, shading on crest—right side of crown, right animal, left half of shield and right side of base. All animals have shaded outline. | Darker, stippled, shading on crest—right side of crown, right animal, left half of shield and right side of base. All animals have shaded outline. |
| SIZE | 4⅜″ x 5¼″ | 4½″ x 5⅞″ |
| BACKGROUND | Solid color—Lighter shade of same color as figure. | Solid color—Lighter shade of same color as figure. |
| ALIGNMENT OF FIGURES | All figures face same way (one way pattern) Alternate rows spaced, so that figures appear precisely opposite vacant spaces in adjacent rows. | All figures face same way. Alternate rows spaced, so that figures appear precisely opposite vacant spaces in adjacent rows. |
| VERTICAL INTERVAL BETWEEN FIGURES | 3″ | 3″ |
| VERTICAL INTERVAL BETWEEN SAME POINT IN DESIGNS IN SAME ROW | 8½″ | 8⅞″ |
| HORIZONTAL INTERVAL BETWEEN FIGURES IN ALTERNATE ROWS | 4½″ | 5⅛″ |
| HORIZONTAL INTERVAL BETWEEN SAME POINT IN DESIGN IN ALTERNATE ROWS | 9⅛″ | 9⅝″ |

It should be noted that these are "one-way" designs, to wit, all the figures face the same way. "One-way" designs are more expensive for the garment manufacturer to use and it is noteworthy that defendants have not only followed the details of plaintiff's design but also copied their use in a "one-way" design.

## COMPARISON SUBMITTED BY DEFENDANTS

### I

### DIFFERENCES BETWEEN PLAINTIFF'S LION DESIGN AND DEFENDANTS' DRAGON DESIGN

| Plaintiff's Lion Design #1546 — Exhibit 1 | Defendants' Design Exhibit 2 |
|---|---|
| Depicts a realistic lion with straight forelegs | Depicts a fanciful four-footed animal similar to a chinese dragon-type figure—with bent forelegs |
| Lion is astride a spear or shaft | No shaft or spear depicted |
| Lion appears to have a full mane and bulky chest and neck | Animal on defendants' design has small neck, chest and shoulders and has no mane |
| Lion appears to be short-haired and smooth-furred | Defendants' animal has fleecy, shaggy, and irregular long haired fur |
| Eyes only suggested in outline | Clearly defined eyes |
| Lion's colorings are shaded and outlined in three dimensional effect | Coloring of defendants' animal is flat without effect of dimension or depth |
| Natural life-like tail | Tail has spears and tip of tail spreads into five pants |
| Underbody of chest, belly and hind quarters have broad-strippled colorings | Thin contrasting streaky coloring on neck, chest and on forelegs; no contrasting coloring on underbody |
| Lion's form is in unbroken regular curved lines | Outline of defendants' animal is irregular, jagged, and spike-like |
| Lion's mouth is open with indication of teeth and projecting tongue in light color | Defendants' animal does not show open mouth and has long tongue in same color as body of animal |
| Colorings of lion are deep and shaded with three dimensional effect | Colorings are flat and light with overall flat effect |

## II

## DIFFERENCES BETWEEN PLAINTIFF'S CROWN ON FOLIAGE DESIGN AND DEFENDANTS' CROWN ON FOLIAGE DESIGN

| Plaintiff's Design #1572 — Exhibit 3 | Defendants' Design Exhibit 4 |
|---|---|
| High pointed crown—height greater than width | Low rounded crown—width greater than height of crown |
| Narrow open-work head band | Wide solid head band |
| Crown comprises four upright members enclosing a hemisphere section of a globe | Crown comprises seven closely-spaced upright members—no globe or other object depicted within crown |
| Crown imposed on closely-spaced fanciful impressionistic foliage | Crown imposed on a bow and spread out leafy stems in a semi-circle around the crown; crown and spreading stems rest on spread out, well defined scroll-like figure and on realistic leafy stems |
| Colorings are shaded with three dimensional effect | Colorings are bright unshaded with flat effect |

## III

## DIFFERENCES BETWEEN PLAINTIFF'S LOCK AND KEY DESIGN AND DEFENDANTS' FILIGREE ORNAMENT DESIGN

| Plaintiff's Design #1544 — Exhibit 5 | Defendants' Design Exhibit 6 |
|---|---|
| There are two principal design figures, i. e., a conventional key with scroll-like key handle and an ornamental scroll work keyhole cover surmounted by a crown | There are three principal design figures, i. e.: (1) an approximately diamond-shaped wavy outlined Slavonic ornament with round hole in center (2) a scroll-like pointed figure, and (3) a scroll-like elongated ornamental figure (like the figure in 2 above) with the addition of an ornamental cross figure. There is no crown on defendants' Slavonic ornament in (1) above. |
| Colorings and outlines of design figures are deep and shaded in application, giving effect of dimension and depth | Colorings and outlines of figures are substantially uniform in application without shadings and with over-all flat effect |

## IV

## PLAINTIFF'S COAT OF ARMS DESIGN AND DEFENDANTS' COAT OF ARMS DESIGN

| Plaintiff's Design<br>#1605 — Exhibit 7 | Defendant's Design<br>Exhibit 8 |
|---|---|
| A royal coat of arms comprised of two crowned standing lions astride a shield surmounted by a crown, 2 leafs, and crowned small lion figure | A royal coat of arms comprised of standing unicorn and a crowned lion astride a shield surmounted by a open-work crown and winged fanciful animal |
| Coat of arms rests on two spreading leaves and banner with legend "PAX QUAERITUR BELLO" | Coat of arms rests on two scrolls and a grecian-type bowl. There is no legend or motto below defendants' coat of arms figure |
| Lions are shown in full face pose | Unicorn and lion shown in side-view profile pose |
| Heraldic shield is in conventional shield form and shape | Heraldic shield is in flattened oval shape |
| Heraldic shield has large diamond, large fleur de lis, a harp and two smaller shields, one in center of heraldic shield and the other in lower right corner of heraldic shield | Heraldic shield has small diamond and triangles in three sections and a small fleur de lis in lower left section of the shield |
| Colorings and outlines of figures are shaded with effect of dimension and depth | Colorings and outlines are substantially uniform with over-all flat effect |